[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by Reid Brothers Construction, Inc. ("Reid") to foreclose a mechanic's lien dated February 17, 1989, in the amount of $195,971.49, recorded in the Marlborough Land Records in Volume 85 at page 595 on premises known as Sherwood Heights owned by the defendant FRI Land Equities, Inc. ("FRI") for land improvement work performed between September 6, 1988 and February 16, 1989.
Trial before this court was held on diverse days beginning on January 29, 1992 and ending on March 19, 1992, limited to the issue of the valid amount of the mechanic's lien, all other issues relative to the foreclosure action being postponed to a future date.
On September 6, 1988 Reid entered into a written contract with FRI to box out the proposed road known as Sherwood Lane for $42,000. On or about September 22, 1988 — Reid entered into 3 additional written contracts with FRI, covering respectively (1) the spreading of gravel on Sherwood Lane for the sum of $9,000(2) the installation of storm and under drains for designated rates of $12 per foot for storm drain and $2.50 per foot for under drain, and (3) the installation of water mains at $8 per foot and water services to property lines at $250 each.
Each of the written contracts, otherwise markedly laconic, contained the following printed language on the contract form.
"The above rate is based upon all rock being less than 2 yards, the absence of ledge and a water table lower than the depth of the excavation."
Significant ledge encountered at a point in the road and water emanating from the ledge when it was blasted have given rise to claims by the plaintiff for various categories of extra work allegedly performed by the plaintiff, most of which it claims was authorized orally by the defendant or its agents. CT Page 3255
Other claims by the plaintiff are based on work performed by it, which was in addition to and not included in the written contracts, and which was required by conditions and/or orally authorized by the agents of the defendant.
In addition, plaintiff makes claims for sums due it under the written contracts which were only partially paid.
Plaintiff introduced into evidence a schedule (Exhibit DDD) summarizing 15 claims or categories which the court designated by successive Roman numerals, from I to XV, to which reference will be made throughout this decision.
The extensive oral testimony and exhibits, often contradictory and inconclusive, raised substantial questions as to what work was contemplated and performed under the written agreements, the existence, scope and terms of alleged oral agreements and the appropriate application of payments made by defendant, particularly to subcontractors of the plaintiff.
1. Claims under the written contracts
It has been stipulated that plaintiff is owed:
under the Water Main Contract (Exhibit P), listed in Category X, the sum of $2,955.
Under the Storm Drain Contract (Exhibit O) listed in Category XI, the sum of $16,500.
Under the gravel spreading Contract (Exhibit Q) listed in Category XIV, the sum of $4,500.
Under the Boxing of the Road Contract (Exhibit L) listed in Category I, plaintiff admits receiving payment of $36,000 and claims a balance of $6,000. It is found that plaintiff failed to complete its obligations under this contract requiring defendant to complete the same at a cost of $5,100, leaving a balance due to plaintiff of $900.
 2. Claim for work performed by reason of ledge and water table conditions
A. Plaintiff claims that it performed various services totalling $20,800 (Category II) not covered by the written contracts, as a result of the presence of "a water table lower than the depth of the excavation."
The only persuasive evidence of a water table lower than CT Page 3256 the depth of excavation" was the outflow of water from the ledge concentration in the area of Lots 15, 16, 17 and 18, which increased significantly when the ledge was blasted. Discussions between the parties or their agents had taken place in September 1988 about water problems on the site and these concerned the presence of a stream and the need to control surface water drainage from damaging the road or the properties located along Roberts Road at a lower excavation. An important purpose of two ponds shown on the plan and excavated by Reid was to serve as detention basins to control such run-off. Further, the site plan given to Reid in connection with the written contracts required the installation of a number of "silt pools", also known as plunge pools, the purpose of which was to control water runoff. On or about November 5, 1988 a combination of rain and water emanating from the ledge created a significant runoff into the detention ponds, some of the completed catch basins and into Roberts Road and the stream running under Roberts Road.
Plaintiff's claim for $20,800 is based on the following:
(1) 60 hours of work by Michael Provencher, an employee of Reid, digging plunge pools and trenches with a backhoe, pulling trunks out of the mud with a backhoe, and clearing silt from the stream below with a backhoe, at the rate of $100 per hour.
(2) Extra work performed by other Reid employees including David Matthieu, in clearing out silt from completed catch basins, sweeping Roberts Road, and the operation of a pump in order to drain catch basins and other areas.
The invoice for $20,800, dated January 21, 1989, contains no details or breakdown of the work.
Digging of the silt pools, shown on the plan, was the responsibility of Reid as part of his contract in boxing out the road. Digging of the trenches, cleaning of the stream, and pulling trunks out of the mud was not Reid's responsibility, and is found to have taken 30 of Provencher's 60 hours, which based on the rate of $100 per hour, totals $3,000.
The additional work in clearing out silt from the catch basins, sweeping Roberts Road, hand work in clearing out the stream, and pump operations is found to have occupied the time of three men for an average of two eight-hour days at the rate of $22.50 per hour for a total of $1,080. In addition, the loss of Reid's pump valued at $800 can fairly be ascribed to this extra work, for a total of $1,880. This added to the $3,000 for Provencher's work, entitles plaintiff to recover $4,880 CT Page 3257 under this category.
B. Plaintiff claims a net balance of $15,000 due it for rock excavation (Category IV). The parties agree that when ledge was encountered an oral agreement was made for the excavation of rock for the sum of $20,000. Defendants claim the agreement required Reid to move the rock off the site while Reid claims his obligation was only to move the rock onto nearby lots. These differing versions are the basis for Reid's separate claims for off-site trucking under Category VII.
Reid acknowledges receipt of $5,000 toward the $20,000 contract price. Defendants claim this balance was partially discharged by a $9,000 payment, which Reid admits receiving, but which he credited to his claim for off-site trucking in Category VII. Defendants claim that the balance of $6,000 was discharged by a payment made to Osowiecki, a trucker, in the amount of $5,965.
It is evident that the claim for rock excavation under Category IV is intimately related to plaintiff's claim for off-site trucking under Category VII, in which plaintiff claims a balance of $57,638.95, after crediting the disputed $9,000 payment and another $2,500, payment against a total claimed under this category of $69,138.75, leaving a claimed balance of $57,638.75. Plaintiff's claim under Category VII is based on an oral agreement alleged by plaintiff under which defendant agreed to pay $55 per truck per hour for moving the shot rock off the site, in addition to the $20,000 oral agreement for rock excavation.
Plaintiff's net claim for rock excavation and off-site trucking under Categories IV and VII total $72,638.75. ($15,000 for rock excavation and $57,638.75 for off-site trucking).
Plaintiff acknowledges that defendant paid the following sums to truckers engaged by plaintiff to move rock off the site:
Diversified $ 2,875
ADC Trucking (Ciulli) 22,500
Amos Bull Trucking 2,250
 Rick Cafro Trucking 5,000 _______ Total: $32,627
In addition defendant claims it paid $5,945 to Osowiecki CT Page 3258 for services for rock excavation but which plaintiff credited to its claim for on-site trucking under Category V, for which he claims a net balance of $28,000. Attached to Reid's Invoice #1263 in Exhibit T, which plaintiff offers in substantiation of its claim under Category V, is Osowiecki's invoice to Reid dated 11/23/88 for $6,685.90. This invoice does not indicate what work was done by Osowiecki, but it simply refers to use of a "Euclid" and "trailer", and charge for a driver.
On the other hand, defendant's Exhibit 28 is a signed statement from Osowiecki acknowledging payment of $5,945 from defendant, in full payment, and indicating that the work was for rock removal. Accordingly, we find that defendant's payment to Osowiecki was for rock removal.
We find that in view of the large and unexpected volume of ledge encountered, the necessity for moving the rock off the site, the undisputed knowledge of the defendants that plaintiff was using many trucks other than those owned by him to move the rock, that defendant assumed the responsibility of paying for the same. To the extent that the claims of Diversified, ADC Trucking, Amos Bull and Cafro for off-site trucking were settled or paid by defendants they no longer form a basis for plaintiff's claim under these categories. Similarly, since we have found Osowiecki's bill was for rock removal, it could have been claimed under this Category VII, off-site trucking, and its payment by defendant removes it from this claim, in the same way as the other truckers' claims.
We are left with Reid's own bills for off-site removal of rock, Invoices #1267 and #1269 (Exhibit BB), totalling $8,308 and bills from Mitchell Excavating (See Reid Invoices 1236 and 1239, in Exhibit BB).
Reid testified that his conversation with Mr. Sammartino, an officer of defendant, about moving the rock off the premises took place on November 25 or 26, 1988. Mitchell's invoice to Reid, #662, shows 27 1/2 hours of work performed on 11/30/88. Mitchell's invoice to Reid, #715, shows an additional 219 hours performed between 12/1 and 12/9. These totals add up to 246 1/2 hours, which at the billed rate of $55, total $13,557.50.
We find that plaintiff is owed under Categories IV, rock excavation, and Category VII, off-site trucking, the following:
Contract price for rock excavation $20,000.00
Reid's invoices for off-site trucking 8,308.00 CT Page 3259
 Mitchell's invoices for off-site trucking 13,557.50 __________ $41,865.50
against which payments were received of $9,000, and $5,000, leaving a balance due of $27,865.50.
C. Plaintiff claims $1,360 for clearing the area involved in setting the charges for the blasting under Category VI. This required the use of a D-8 for 8 hours and a payloader for 8 hours, as evidenced by Invoice #1230 in Exhibit MM. This was clearly a justified extra and it is found that defendant is liable for the amount of $1,360.
3. Claims for Miscellaneous Extra Work
A. Plaintiff claims $4,050 for erosion control, his invoice dated 11-30-88 showing 180 hours at $22.50 per hour. This work consisted primarily of bales of hay supplied by defendant being placed every few hundred feet across the road at night to prevent erosion, and then being moved each morning so that work could proceed on the road. Plaintiff claims this as an extra which was discussed with Mr. Sammartino.
Defendants denied any discussions and claim this work was part of Reid's obligations under the road boxing contract. Exhibit L, the written contract for the road boxing, contains no reference to erosion control.
Erosion control was necessary in order for plaintiff to complete the boxing out of the road in a workmanlike manner.
We find that plaintiff has failed to sustain its burden of proving that either this was extra work not contemplated as part of the road boxing contract or that defendant intended to pay for it.
B. Plaintiff claims $28,000 for on-site trucking the excavated materials from boxing out the road to various lot locations at the request of the defendant. Plaintiff argues that such trucking was not contemplated under the written contract for boxing out the road, which simply required it to "place the excess material off the road in piles", and that the material had been pushed off the sides of the road. Reid testified that he requested payment of $2 per yard for such trucking and that 14,000 yards were trucked. In addition, plaintiff claims that Osowiecki's bill, discussed above, was for additional on-site trucking, conceding that it was substantially paid by defendant directly to Osowiecki. CT Page 3260
We find that plaintiff has failed to sustain its burden of proof as to this claim. The language of the written contract, prepared on plaintiff's form, is inconclusive. "Placing the excess material off the road in piles" means something more than merely shoving the material off the sides of the road while in the process of excavating. It is striking, that in view of the ambiguity of the written contract, Reid made no effort to concretize a commitment by defendant to pay $2 per yard for such on-site trucking by reducing it to a writing. 12,000 yards of the 14,000 yards claimed to be trucked were based on hours logged by plaintiff's employee, Columbe, who was the same individual who did most of the work on the boxing out of the road. Plaintiff's effort to establish an agreement to treat this work as an extra by claiming that the work done by Osowiecki was essentially on-site trucking is not persuasive, since, as previously mentioned, the only specific information to be gleaned from the Osowiecki exhibits indicate that his trucking involved moving rock off site.
C. Plaintiff originally claimed a balance due of $11,441.35 for miscellaneous trucking under Category VIII, consisting of various invoices appearing in plaintiff's Exhibits EE, JJ, PP and SS.
During trial, the parties stipulated that defendant owed $1940 under Invoice #1226 and $1300 under Invoice #1233. Under Invoice #1221, claiming $5,984, defendant acknowledges owing $2,884, $3,100 remaining in dispute, and under Invoice #1281, claiming $1,668.93, defendant acknowledges $568.93, $1,100 remaining in dispute. No further claims are made under the remaining invoices.
Under Invoice #1221 (Exhibit JJ) dated 11/26/88 the dispute covering the amount of fill trucked to the pump house, plaintiff claims payment for 2800 yards at $2 per yard. In view of the request of defendant for such service, the Reid testimony, the timeliness of the invoice and the lack of refutation by defendant, it is found that the full amount of $5,984 is due plaintiff.
Under Invoice #1281 (Exhibit SS) defendant disputes that portion of the invoice which is for on-site trucking in the amount of $1,100. As we have previously noted, plaintiff has failed to sustain its burden with respect to claims for on-site trucking, and we find that defendant owes plaintiff only the acknowledged sum of $568.93 under this invoice.
It is found that defendant owes plaintiff a total sum CT Page 3261 of $9792.93 under this category.
D. Parties have stipulated that defendant owes plaintiff the following sums under the following categories:
 Hay Snow Shelf $ 500 (Category IX)
 Install and clean Curtain Drains 16,500 (Category XII)
 Catch Basins and Structures 7,200 (Category XIII)
E. Plaintiff claims under Category XV, $25,000 by reason of the promise of defendant to let it have approximately 5000 yards of fill excavated from the road and stockpiled on Lots 2 and 3 in payment of additional work including additional excavation of the ponds. Although defendant has acknowledged this promise, plaintiff was not given an opportunity to take this fill. It is found that the fair market value of the fill was $2.50 per yard and that plaintiff is due the sum of $12,500.
In summary it is found that the amount due plaintiff under the mechanic's lien is $88,953.43, consisting of the following, listed by categories, as referenced on plaintiff's Exhibit DDD.
Category I (Box Road) $ 900.00
Category II (Excavation below Water Table) 4,880.00
Category III (Erosion Control) —
Category IV and VII (Rock Excavation and 27,865.50 Off-site Trucking)
Category V (On-site Trucking) —
Category VI (Clear for Blasting) 1,360.00
Category VII (See IV) —
Category VIII (Miscellaneous Trucking) 9,792.93
Category IX (Hay-Snow Shelf) 500.00
Category X (Water Main) 2,955.00 CT Page 3262
Category XI (Storm and Under Drain) 16,500.00
Category XII (Curtain Drain) —
Category XIII (Catch Basins) 7,200.00
Category XIV (Spread Gravel) 4,500.00
Category XV (Pond Excavation) 12,500.00
Total due plaintiff under Mechanic's Lien $88,953.43
WAGNER, JUDGE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 3264